## KINNE and others *vs:* FORD and others.

In an action to recover the value of a check for $10,000 in gold, alleged by the plaintiffs to have been delivered by them to a clerk of the defendants, a witness testified to the delivery to the clerk of the check in question; that he took no receipt for the same, and did not get the defendants' check for currency, for the amount of the check he had delivered. Upon the question of the delivery or non-delivery of the gold check, the plaintiffs were permitted, by the judge, to prove that other persons who were late in their delivery of checks payable in gold were sometimes accustomed to leave the checks and take no checks for currency in payment, until afterwards. *Held*, this was error; it appearing that the witness knew of no such custom; had delivered no gold check before this one, as he could remember; and did not pretend that this custom was the reason of his taking no check for the one he delivered.

And the witness having testified that he left a certified gold check, on the desk, in the office of the defendants, in the presence of a clerk whose business it was to receive gold, who was busy, at the time, and said nothing; *Held*, that the judge erred in his refusal to charge the jury "that the leaving of the

Kinne *v.* Ford.

check upon the counter or desk without the clerk's knowledge, was not a delivery, unless it was actually received by him or the defendants."

*Held, also,* that if the clerk, for any reason, did not consent to the delivery of the check, either from mental infirmity or lack of attention, or any physical incapacity, there was no delivery to him, in law. That he must have been capable of assenting, and have assented to, the act, at the time he was alleged to have done so. That the delivery was a thing in which both parties must join; and the minds of both parties must concur.

THIS action was brought to recover the value of a check for $10,000 in gold, alleged by the plaintiffs to have been delivered to the defendants by them on the 20th day of January, 1865, in pursuance of a previous agreement.

On the 19th of January, 1865, the plaintiffs borrowed of the defendants, $50,000 in gold, paying at the time the agreed value of the gold at the rate of 208½, viz. $104,250, and at the time it was agreed that the plaintiff should on the next day, on the 20th of January, 1865, return to the defendants $50,000 in gold, and receive pay therefor at the same rate. Afterwards, on the same 19th of January, 1865, the plaintiffs purchased of the defendants $10,000 in gold at 208 per cent to be delivered on the 20th. On the morning of the 20th, the plaintiffs delivered $30,000 in gold, and by mutual agreement, $10,000 of the gold plaintiffs were bound to deliver was set off against the $10,000 the defendants were liable to deliver to the plaintiffs on the 20th, leaving $50 due the plaintiffs on this transaction, the difference on the price of the two parcels of $10,000 set off against each other. All this is admitted in the pleadings. There remained $10,000 of gold to be delivered by the plaintiffs to the defendants on the said 20th of January, 1865. This the plaintiffs claim they delivered by giving to the defendants a certified gold check issued by the bank of the state of New York, for $10,000. The defendants' answer puts in issue the receipt of this gold check and sets up a counter-claim which was not proved, but was disproved and was formally abandoned at the trial. Thus the only issue in the case and the only issued tried

was that of the delivery of this $10,000 gold check. The jury found a verdict for the plaintiffs, and the case comes here on appeal by the defendants from an order denying a new trial, as well as on appeal from the judgment.

*E. W. Stoughton*, for the appellants.

*Henry A. Cram*, for the respondents.

J. F. BARNARD, J. The great question for the jury in this action, was, the delivery of the $10,000 check by Carver, one of the plaintiffs, to Coddington, the clerk of the defendants. If the evidence admitted by the court upon this issue was proper and there was no error in the charge of the judge, the finding of the jury cannot be disturbed on appeal to this court.

The witness Carver, who testified to the delivery to Coddington of the check in question, fixes the time of such delivery at nearly a quarter past 2 P. M. on the 20th January, 1865. On his cross-examination he testified that he took no receipt for the check, and did not get the defendants' check for the amount of the gold draft which he had delivered. To meet the effect of this fact with the jury on this question of delivery or non-delivery of the gold check in question, the plaintiffs were permitted by the judge to prove that other persons who were late in their delivery of checks payable in gold were sometimes accustomed to leave the checks and take no check for currency in payment until afterwards.

I think this was error. The witness Carver knew of no such custom, had delivered no gold check before this one as he could remember, and did not pretend that this custom was the reason of his taking no check for the one he delivered.

The question was, did he deliver this check in the

Kinne *v.* Ford.

manner and at the time he testified he did. · It was not legitimate or proper evidence upon this issue that persons about whose deliverances of stock no question is made, were sometimes accustomed to deliver checks and received neither evidence nor payment, when such custom was neither known to the witness nor stated by him as a reason why he omitted to take either receipt or payment.

I think the judge erred also in his refusal to charge the jury, as requested by the defendants, "that the leaving of the check upon the counter or desk without Coddington's knowledge was not a delivery, unless it was actually received by him or the defendants." Delivery was the transfer of the possession of the check in question, with the intent to transfer the title by the plaintiffs to the agent of the defendants, and the acceptance, by such agent, of the check for his employers with the intent to receive such title. It is a thing in which both parties must join. The minds of both parties must concur.

Instead of charging the undeniable proposition as requested, the judge charged that "if the defendants put a deaf man there or a stupid man, or any other circumstances which prevented him from paying that attention which an ordinary prudent man would pay, and he did not hear Mr. Carver if he did speak to him, that is the misfortune of the defendants."

I do not deem this the law. If the clerk, for any reason, did not consent to the delivery of the check, either from mental infirmity or lack of attention, or any physical incapacity, there was no delivery to him in law. He must have been capable of, and have assented to, the act at the time he is alleged to have done it.

For these reasons I think the judgment should be reversed and a new trial granted; costs to abide the event.

[NEW YORK GENERAL TERM, November 2, 1868. *J. F. Barnard, Ingraham* and *Mullin,* Justices.]